**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Sheville, | No. CV05-02790-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| America West Airlines, Inc., | |
| Defendant. | |

Pending before the court is Defendant's Motion for Summary Judgment and Statement of Facts (Doc. ## 66, 67); Plaintiff's Response and Statement of Facts (Doc. ## 73, 74); and the Reply (Doc. # 75). Defendant's Motion shall be granted.

Plaintiff initiated this lawsuit in Maricopa County Superior Court on July 20, 2005. Defendant removed Plaintiff's action to this court on September 13, 2005. On January 10, 2006, Plaintiff submitted an Amended Complaint alleging causes of action for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq.*, as well as for violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.* (Doc. # 20.)

All but two of Plaintiff's claims were dismissed with prejudice in Orders dated March 9, 2006, and April 27, 2006, respectively. (Doc. ## 30, 44.) For the reasons set forth below, Defendant is entitled to judgment as a matter of law as to Plaintiff's remaining causes of action for wrongful termination under the ADA and the FMLA.

## I.     Facts

Plaintiff, a British national, was employed as a load planner of operations for America West Airlines at Phoenix Sky Harbor International Airport from October 9, 1995, until December 1, 2004. (Doc. # 66 at 2.) Plaintiff was an at-will, non-management employee responsible for calculating the weight and balance of departing America West aircraft. (Doc. # 67 at 1.) Plaintiff utilized an America West computer and its internet and email systems to perform his job, and he agreed on April 29, 2003, not to "create, store display or send any image or document sexual in nature" while using his employer's computers. (Doc. # 66 at 2; Def. Ex. 13, 14.) Plaintiff also executed an acknowledgment of America West's non-discrimination policy, which specifically prohibits "derogatory . . . emails that denigrate or show hostility" toward women, on March 27, 1996. (Def. Ex.14, 15.)   Plaintiff received annual training on the company's sexual harassment policy. (Sheville Dep. 43, Mar. 29, 2006.)

Defendant alleges, and Plaintiff does not deny, that Plaintiff sent the following graphic emails from his company computer to various coworkers and one supervisor: (1) "White Elephant" sent November 20, 2004, and depicting  women wearing see-through skirts; (2) "Five Ways to Hypnotize a Man" sent October 29, 2004, and depicting a large-breasted woman gyrating her naked breasts in five different directions; (3) "How to Get Men to Read the Sexual Harassment Policy" sent November 20, 2004, and depicting a large-breasted woman in a cutoff, wet, see-through tank top with her nipples visible through the text of a corporate sexual harassment policy; and (4) "Privates on Parade" sent November 26, 2004, and depicting a male guard clad in a kilt with his genitalia visible. (Def. Ex. 7-10.) Plaintiff also retained an email entitled "Wicked Weasel" in his company inbox that had been sent to him by a co-worker on August 25, 2002, and which depicts scantily clad women with nipples, pubic hair and genitalia visible. (Def. Ex. 11.)

In November 2004, America West's Director of Operations John Daley was made aware of employee misuse of company internet and email systems by one of Plaintiff's co-workers. (Doc. # 66 at 2.) Mr. Daley instructed his Operations Manager, Larry Bowdler, to

1  investigate the report. (*Id.*) After reviewing the results of this investigation, Bowdler, Daley
2  and Ms. McShane, the Senior Manager for Employee Relations, decided to terminate
3  Plaintiff's employment "for violations of the Company's policy prohibiting harassment and
4  discrimination in the workplace and the Company's internet/email usage policy."[1] (*Id.* at 3.)
5  Miguel Sepulveda, the America West employee who sent the "Wicked Weasel" email to
6  Plaintiff, was also terminated for identical reasons. (Def. Ex. 6 at 3.)

7        Defendant's investigation into the allegations of computer misuse also resulted in the
8  discipline, but not the termination, of five other members of America West's load planning
9  department. (*Id.* at 4-5.) America West avers that these employees were not terminated
10 because the emails traced to them during the course of the November 2004 investigation "did
11 not contain frontal nudity," as did the emails sent and received by Sheville and Sepulveda.
12 (Doc. # 67 at 4; Doc. # 75 at 5.)

13       Plaintiff was diagnosed with multiple sclerosis in the summer of 2000. (Doc. # 67 at
14 2.) In July 2000, Plaintiff requested and was granted a leave of absence from his
15 employment at America West for three months. (*Id.*) Plaintiff never requested another leave
16 of absence beyond the ten days of paid sick leave to which he was entitled annually. (*Id.*)
17 Plaintiff's chronic central nervous system disease caused him to limp, but did not prevent
18 him from performing his duties as a load planner. (Sheville Dep. 30, Mar. 29, 2006.)
19 Significantly, Mr. Sepulveda, who was fired along with Plaintiff on December 1, 2004, did
20 not suffer from multiple sclerosis and had never taken leave under the Family Medical Leave
21 Act. (Doc. #66 at 3.) Also critical to the disposition of this case is the fact that Plaintiff's
22 immediate supervisor, Keith Burns, who was diagnosed with multiple sclerosis before
23 Plaintiff, and who has also taken FMLA leave related to this medical condition, remains
24 employed in America West's load planning department. (*Id.* at 4.)

---

[1] Plaintiff believes that his employment was terminated on December 1, 2004, solely for his violation of America West's email and internet usage policy. (Doc. # 74 at 1.) This distinction is not material to the disposition of this case.

- 3 -

## II.     Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must evaluate a party's motion for summary judgment construing the alleged facts with all reasonable inferences favoring the nonmoving party. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. *See also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Summary judgment is not appropriate when the nonmoving party submits evidence from which a reasonable juror, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor. *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999). Although the initial burden is on the movant to show the absence of a genuine issue of material fact, this burden may be discharged by indicating to the court that there is an

absence of evidence to support the nonmoving party's claims. *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001).

### III.     Wrongful Termination under the Americans with Disabilities Act

Plaintiff alleges that Defendant unlawfully terminated his employment because Plaintiff suffers from a disability, multiple sclerosis. (Doc. # 20 at 4.) This claim is founded upon the Americans with Disabilities Act, which prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a).

#### A.     The *McDonnell Douglas* Framework Applies

Plaintiff's employment discrimination claim is governed by the same three-stage burden-shifting analysis that is applied to lawsuits arising under Title VII of the Civil Rights Act of 1964. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). Under this framework, Plaintiff shoulders the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Establishment of a prima facie case creates a presumption of unlawful discrimination, which Defendant must rebut by articulating a legitimate, non-discriminatory reason for its adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. The burden that shifts to the defendant-employer is only a burden of production, not a burden of persuasion: "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

In the third and final stage, the burden devolves upon Plaintiff to prove by a preponderance of the evidence that the reasons advanced by Defendant constitute mere pretext for unlawful disability discrimination. "This burden now merges with the ultimate burden of persuading the court that [Plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256. Therefore, to survive Defendant's Motion for Summary Judgment, Plaintiff most raise a genuine issue of material fact that Defendant's legitimate, non-discriminatory reason for her termination was pretextual. *Snead*, 237 F.3d

1  at 1094. Plaintiff may demonstrate pretext either directly, by persuading the court that a
2  discriminatory reason more likely motivated the employer, or indirectly, by showing that the
3  employer's proffered explanation is unworthy of credence. *Id.* at 1093-94.

4  **B.     Establishing a Prima Facie Case of Discrimination under the ADA**

5  To establish a prima facie case of wrongful termination under the Americans with
6  Disabilities Act, Plaintiff must establish, by a preponderance of the evidence, (1) that he is
7  a disabled person within the meaning of the ADA; (2) that, with or without reasonable
8  accommodation, he is able to perform the essential functions of the job; and (3) that the
9  employer terminated him because of his disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477,
10 1480 (9th Cir. 1996). Plaintiff and Defendant agree that Plaintiff is a "qualified individual
11 with a disability" who may state a claim for wrongful termination under the ADA. (Doc. #
12 66 at 5.) Defendant contends, however, that Plaintiff has failed to produce evidence creating
13 a genuine issue of material fact as to the whether Defendant discriminated against him
14 because of his disability. It is to this third prong of Plaintiff's prima facie case that the court
15 now turns.

16 **1.     Disparate Discipline**

17 Plaintiff identifies two theories in support of his contention that America West
18 terminated his employment on December 1, 2004, because of his disability, rather than for
19 his violation of his employer's computer, email and harassment policies. First, Plaintiff
20 notes that Defendant singled him out for especially harsh discipline after the November 2004
21 investigation of computer misuse in the load planning department was completed. "All co-
22 workers," urges Plaintiff, "sent the same type of emails during working hours using the
23 Company's computers and email system," yet only he and Mr. Sepulveda were terminated.
24 (Doc. # 73 at 2.)

25 Plaintiff bolsters this claim of disparate treatment by drawing the court's attention to
26 a multitude of scatological, depraved and sometimes pornographic emails that other members
27 of the load planning department, including team leader Noel Thorpe and supervisor Roger
28 Bradley, exchanged during the very time that Defendant's investigation into computer misuse

1  was being conducted. (Doc. # 73 at 3-5.) One of Plaintiff's load-planning colleagues
2  explained that, prior to Plaintiff's termination, sending, receiving and viewing pictures of
3  naked women on Defendant's computers during working hours was unexceptional, since "the
4  whole time [he] was there everybody was doing it . . . everybody saw it." (Dep. Saldana 10,
5  July 26, 2006.) While Plaintiff was terminated for sending similar emails, many of his
6  colleagues in the load planning department did not even receive a warning, much less formal
7  discipline from management. The only explanation for such disparate treatment, contends
8  Plaintiff, is that Plaintiff has multiple sclerosis, while his colleagues do not.

9  But the essential predicate to Plaintiff's claim of discriminatory discharge under the
10  ADA–that he was terminated *because* of his disability–is not established by these facts. The
11  record is barren of direct evidence showing that America West's decision to terminate
12  Plaintiff was motivated by his disability. Plaintiff's attempt to make out a prima facie case
13  of wrongful termination with circumstantial evidence of disparate treatment must also fail.
14  His contention is severely undercut at the outset by the fact that Plaintiff's colleague Mr.
15  Sepulveda, who was never diagnosed with multiple sclerosis but who also sent emails
16  containing full frontal nudity from his company computer, was fired along with Plaintiff on
17  December 1, 2004. Plaintiff cannot be heard to advance a colorable claim of disparate
18  treatment when America West treated a similarly situated employee outside of Plaintiff's
19  protected class of disabled persons no more favorably than it treated him

20  Furthermore, Plaintiff has not presented evidence showing that the individuals who
21  were conducting the investigation into the alleged violations of America West's computer,
22  email and harassment policies were even aware of these additional violations at the time that
23  Plaintiff was terminated. The evidence establishes only that Bowdler, Daley and McShane
24  considered "approximately a dozen emails sent by non-management personnel employed in
25  the load planning department which contained attachments of an inappropriate, non business
26  nature" when they made the disciplinary decisions that resulted in Plaintiff's termination.
27  (Doc. #67 at 4.) These managers aver that "after reviewing the frontal nudity depicted in the
28  emails sent by Mr. Sepulveda and plaintiff, and comparing them to the emails sent by other

1 members of the department, none of which contained frontal nudity and most of which
2 contained no nudity at all, [they] made the determination to terminate Mr. Sepulveda and
3 plaintiff and to provide progressive counseling to the other affected members of the
4 department." (*Id.* at 5.)

5       Even when drawing all inferences in favor of the nonmoving party, the evidence
6 cannot but support Defendant's contention that its decision to terminate Plaintiff and
7 Sepulveda, and to provide "progressive counseling" to five of their colleagues, was
8 motivated in good faith by business judgment, not discriminatory animus. Federal statutes
9 proscribing employment discrimination are not intended to be vehicles for general judicial
10 review of business decisions, as the Court of Appeals for the Ninth Circuit had made clear.
11 *See Douglas v. Anderson*, 656 F.2d 528, 534 (9th Cir. 1981). It may be true that, as Plaintiff
12 suggests, many more of Plaintiff's co-workers would have been disciplined and perhaps even
13 terminated had Bowdler, Daley and McShane conducted a more searching perscrutation into
14 compliance with America West's computer, email and harassment policies in the load
15 planning department. But this court does not presume to sit as a "super personnel department
16 that re-examines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d
17 458, 464 (7th Cir. 1986). The relevant question under the Americans with Disabilities Act
18 is not whether America West's disciplinary decision was "prudent," but rather whether
19 Defendant terminated Plaintiff because of his multiple sclerosis, or for some other legitimate,
20 non-discriminatory reason–no matter how ill-advised or unprincipled it may be. *See Elrod*
21 *v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("No matter how medieval
22 a firm's practices, no matter how high-handed its decisional process, no matter how mistaken
23 the firm's managers, the [federal discrimination statute] does not interfere.").

24       **2.**    **"Unfriendly" Treatment**

25       Second, Plaintiff alleges that his supervisor treated him differently after becoming
26 aware of Plaintiff's worsening physical condition. But Plaintiff's circumstantial evidence
27 of "unfriendly" treatment by his supervisor is not sufficient to create a material fact as to the
28 allegedly discriminatory reason for his termination. Plaintiff took five of his available paid

- 8 -

1  sick days from August 18 through August 24, 2004, for reasons related to his multiple
2  sclerosis. (Doc. #67 at 9.) When Plaintiff returned to work after steroid treatment, Director
3  of Operations Daley inquired into his health. (Sheville Dep. 111, Mar. 29, 2006.) Plaintiff
4  informed his supervisor about his continuing treatment, and also told him that his physical
5  condition was deteriorating. (Doc. # 74 at 20.) Plaintiff perceived a change in his
6  supervisor's treatment after this conversation: "I did feel in the weeks between then and
7  when I was terminated, that maybe I was treated a little bit different." (Sheville Dep. 114,
8  Mar. 29, 2006.) Plaintiff avers that Daley "no longer smiled at him or asked him how he was
9  doing," and, almost four months after informing Daley about his worsening condition, he was
10 terminated by Daley, Bowdler and McShane. Doc. # 73 at 9.)

11 A reasonable juror could not conclude on the basis of such testimony that Plaintiff's
12 worsening multiple sclerosis, rather than his patent violation of America West's corporate
13 computer, email and harassment policies, was the reason for his termination on December
14 1, 2004. While Plaintiff makes the conclusory assertion that the "proximity in time between
15 Plaintiff's protected action and the termination decision also supports inferences of
16 discrimination," a nearly four-month delay between Plaintiff's admission of his progressing
17 disability and his termination does no such thing. (*Id.*)

18         **3.**    **Conclusion**

19 The evidence of disparate treatment submitted by Plaintiff does not create a triable
20 issue of material fact as to the third prong of Plaintiff's prima facie case under the ADA
21 because it does not tend to show, either directly or circumstantially, that Defendant
22 terminated Plaintiff because of his disability. Because Plaintiff has not satisfied the first step
23 in the *McDonnell Douglas* framework by a preponderance of the evidence, Plaintiff's claim
24 of wrongful termination under the ADA must fail.

25         **C.**    **Defendant Nevertheless Offers a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment**
26
27 Even if the foregoing evidence were sufficient to establish a prima facie case of
28 disability discrimination under the ADA, Defendant has rebutted the resulting presumption

- 9 -

1  by articulating a legitimate, non-discriminatory reason for its adverse employment action.
2  Plaintiff does not deny that Defendant placed him on notice of America West's computer,
3  email and harassment policies.  (Sheville Dep. 32, Mar. 29, 2006.)  After determining that
4  Plaintiff violated this policies, Defendant terminated him and a similarly situated member of
5  the load planning department.  Termination based on employee misconduct rather than an
6  underlying disability is not prohibited by the ADA.  *Collings v. Longview Fibre Co.*, 63 F.3d
7  828 (9th Cir. 1995) (holding that the ADA is not designed to insulate disabled employees
8  from disciplinary actions which would be taken against them regardless of their status).

### D. Defendant's Stated Reason for Termination is not Pretextual

Continuing to indulge the assumption that Plaintiff has established a prima facie case under the ADA, the burden is once again on the Plaintiff to identify evidence raising a genuine issue of material fact regarding the truth of his former employer's proffered reasons for the termination. *See, e.g.*, *Chuang v. University of California Davis Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000) (the underlying burden is on Plaintiff to prove by a preponderance of the evidence that the reasons advanced by Defendant constitute mere pretext for unlawful disability discrimination); *Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987) (Plaintiff may rely at this stage on the evidence that he already introduced to establish his prima facie case).  Plaintiff may present direct evidence of discrimination, or specific and substantial circumstantial evidence of discrimination to satisfy his burden of production at this stage. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

"Direct evidence is evidence which, if believed, proves the fact of discriminatory animus *without inference or presumption*." *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 662 (9th Cir. 2002) (alterations, quotations and citations omitted); *see also Godwin*, 150 F.3d at 1221 (same).  In this case, it is undisputed that Plaintiff has not adduced direct evidence of discriminatory termination.

"To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v.*

- 10 -

*County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (footnote omitted); *accord Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). Plaintiff "may establish pretext through evidence showing that [the employer's] explanation is unworthy of belief or through evidence showing that discrimination more likely motivated its decision." *Pottenger v. Potlach Corp.*, 329 F.3d 740, 746 (9th Cir. 2003); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996). Plaintiff's subjective belief that his supervisors were less friendly to him than normal after discovering that his multiple sclerosis had worsened in the summer of 2004 does not, as an initial matter, rise to the level of "specific and substantial" evidence impugning his employer's proffered rationale for the termination.

Abnormalities in the employer's handling of a complaint against its employee may be circumstantial evidence of discrimination. *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1122-23 (9th Cir. 2004) (upholding finding of unlawful motivation given an unusually severe reaction to a complaint by an employer, including suspension without pay where other complaints had been treated less severely). But Plaintiff submits no specific and substantial evidence of procedural irregularities. However blind America West may have been to the locker room atmosphere that pervaded its load planning department, the evidence suggests that Defendant investigated the alleged violations of its corporate policies, and promptly disciplined the offending employees on the basis of the images before it and in the manner that its managers deemed appropriate under the circumstances.

Although Plaintiff does not agree with his employer's decision to terminate him while only reprimanding the majority of his colleagues, he has not adduced sufficient evidence, circumstantial or otherwise, from which a rational fact-finder could conclude that he was discriminated against on the basis of his disability. Plaintiff therefore fails to carry his burden under the third and final stage of the *McDonnell Douglas* framework and Defendant is entitled to judgment as a matter of law.

**IV.   Wrongful Termination under the Family Medical Leave Act**

Plaintiff next argues that Defendant violated the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, by terminating him for exercising his statutory right to take leave for personal

1  medical reasons. *Liu v. Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003).  The FMLA entitles
2  qualifying employees to take unpaid leave for up to 12 weeks each year provided they have
3  worked for the covered employer for 12 months. 29 U.S.C. § 2612(a). The parties agree that
4  Plaintiff is a qualifying employee, and Defendant a covered employer under the Act.
5  Therefore, the dispute centers exclusively upon Defendant's alleged interference with
6  Plaintiff's right to take leave. 29 U.S.C. § 2615(a).
7  　　　　An employee who claims that his employer interfered with his rights by terminating
8  him in violation of the FMLA may prevail at trial only if he can establish a prima facie case
9  of wrongful discharge by a preponderance of the evidence. *Liu*, 347 F.3d at 1135-36. The
10 *McDonnell Douglas* framework does not apply to claims of adverse employment action
11 under the FMLA. *Id*.  To survive summary judgment, Plaintiff must therefore raise a
12 genuine issue of material fact as to each of the following three elements of his prima facie
13 case: (1) he took FMLA leave; (2) he suffered an adverse employment decision; and (3) the
14 adverse decision was causally related to his leave. Although Plaintiff easily satisfies the
15 summary judgment standard for the first two prongs of his prima facie case, Plaintiff has
16 failed to raise a genuine issue of material fact on whether his termination was causally
17 connected to his leave-taking under the FMLA.
18 　　　　Plaintiff avers that he took three months of FMLA-protected leave in the summer of
19 2000, shortly after being diagnosed with multiple sclerosis. (Sheville Aff. 1-2, Oct. 2, 2006.)
20 Plaintiff was terminated by Defendant more than four years later on December 1, 2004.
21 Plaintiff took no leave under the FMLA for his medical condition during the period between
22 July 2000, and December 2004. (Sheville Dep. 26-27, Mar. 29, 2006.)   Instead, Plaintiff
23 utilized his annual allotment of ten paid sick days to schedule medical appointments. (*Id*.)
24 Defendant seizes upon the long delay between Plaintiff's exercise of his statutory rights
25 under the FMLA, and the adverse employment action, and concludes that "there is
26 insufficient temporal proximity to draw a causal connection." (Doc. # 66 at 12.) *See Clark*
27 *County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (a "very close"connection
28

- 12 -

between employer's knowledge of protected activity and the adverse employment action is required to establish causation by "mere temporal proximity").

Plaintiff seeks to overcome Defendant's four-year delay argument by introducing evidence about a much shorter temporal gap of only four months. As set forth above, Plaintiff informed Director of Operations Daley of his deteriorating medical condition after returning from five days of paid, non-FMLA sick leave in August 2004. After this conversation, Plaintiff perceived that he was treated differently by management until the date of his termination in December 2004. This evidence, contends Plaintiff, raises a triable issue of material fact as to third prong of his prima facie case, which requires him to establish that the adverse employment decision was causally related to his FMLA leave. (Doc. # 73 at 9.) To restate Plaintiff's argument is to expose its asthenia. The Family Medical Leave Act requires Plaintiff to establish a causal connection between the taking of leave *under the FMLA* and the termination of employment. Yet Plaintiff's theory of causation is addressed to Plaintiff's unprotected activity–taking five paid non-FMLA sick days–and his subsequent termination. Plaintiff may not elide his burden of production under the Family Medical Leave Act by focusing on irrelevant leave.

Plaintiff's final, conclusory assertions relating to "inconsistencies in the treatment between Plaintiff and his co-workers" may be disposed of readily. (*Id*. at 9-10.) Defendant has effectively rebutted Plaintiff's disparate treatment argument by noting that another member of America West's load planning department, Keith Burns, took FMLA leave for the same medical condition as Plaintiff but has not been terminated. (Doc. # 66 at 13.) Plaintiff's wrongful discharge claim under the FMLA must fail because Plaintiff has not created a triable issue of material fact as to causation, the third element of his prima facie case.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment, Doc. # 66, is granted.

/ / /

/ / /

1   IT IS FURTHER ORDERED that the clerk enter judgment in favor of Defendant and
2   that Plaintiff take nothing.  The clerk shall terminate this action.
3   DATED this 4th day of December 2006.

*/s/ Neil V. Wake*
Neil V. Wake
United States District Judge